## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STICHTING PENSIOENFONDS METAAL EN TECHNIEK; STICHTING PME PENSIOENFONDS; STICHTING MN SERVICES AANDELENFONDS NOORD-AMERIKA; AKADEMIKERPENSION; E. ÖHMAN J:OR FONDER AB; and STOREBRAND ASSET MANAGEMENT AS, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

VERIZON COMMUNICATIONS INC., HANS VESTBERG, MATTHEW ELLIS, KYLE MALADY, JAMES GOWEN and ANTHONY SKIADAS,

Defendants.

No. 1:23-cv-5218 (ESK) (AMD)
*Document Filed Electronically*

ORAL ARGUMENT REQUESTED

**RETURN DATE:**
June 17, 2024

## REPLY IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

Geoffrey J. Ritts (*pro hac vice*)
Adrienne Ferraro Mueller (*pro hac vice*)
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939

Nina Yadava (*pro hac vice*)
Jennifer L. Del Medico
**JONES DAY**
250 Vesey Street
New York, New York 10281
(212) 326-3746

Lawrence S. Lustberg
Samuel I. Portnoy
Michael V. Caracappa
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4909

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS....................................................................................................i

TABLE OF AUTHORITIES...........................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ...................................................................................................................2

    I.    Plaintiffs' Section 10(b) Misstatement Claims Fail for Lack of Scienter. ........................................................................................................2

        A.    Plaintiffs Concede the Absence of Any Motive to Commit Fraud. ......................................................................................................2

        B.    Plaintiffs Fail to Plead Extreme Recklessness by Any Individual Defendant..........................................................................2

        C.    Plaintiffs Also Fail to Plead Verizon's Scienter. ..............................8

    II.    None of the Alleged Misstatements Are Actionable...................................8

        A.    The Group 1 Statements Are Inactionable Opinions. ....................8

        B.    The Group 2 Statements Lack Particularity..................................10

        C.    The Group 3 Statements Are Inactionably Vague and General........................................................................................................11

        D.    The Group 4 Statements Are Inactionable for Multiple Reasons. .......................................................................................12

        E.    The Group 5 Statements Are Inactionable Opinions. ..................14

    III.    Plaintiffs' Scheme Liability Claims Fail for Multiple Reasons. ...............14

    IV.    Plaintiffs' Section 20(a) Claims Fail for Multiple Reasons. .....................15

    V.    Dismissal of the Case Should Be with Prejudice. ......................................15

CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) ...............................................................5

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d. Cir. 2013) .........................................................................15

*City of Livonia Emps.' Ret. Sys. v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ...........................................................................2

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
70 F.4th 668 (3d Cir. 2023).................................................................... 9, 14

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) .............................................................................3

*Hall v. Johnson & Johnson*,
No. 18-cv-1833, 2019 WL 7207491 (D.N.J. Dec. 27, 2019).........................4, 5, 6, 13

*Howard v. Arconic Inc.*,
395 F. Supp. 3d 516 (W.D. Pa. 2019) ................................................... 11, 13

*Howard v. Arconic Inc.*,
No. 17-cv-1057, 2021 WL 2561895 (W.D. Pa. June 23, 2021) ...................................15

*In re Able Labs. Sec. Litig.*,
No. 05-cv-2681, 2008 WL 1967509 (D.N.J. Mar. 24, 2008)......................................15

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) .......................................................................1, 2, 3, 7, 8

*In re Allergan Generic Drug Pricing Sec. Litig.*,
No. 16-cv-9449, 2019 WL 3562134 (D.N.J. Aug. 6, 2019)........................................10

*In re Bristol-Myers Squibb Sec. Litig.*,
No. 00-cv-1990, 2005 WL 2007004 (D.N.J. Aug. 17, 2005)......................................10

*In re Ocugen, Inc. Sec. Litig.*,
No. 23-1570, 2024 WL 1209513 (3d Cir. Mar. 21, 2024)............................................15

*In re Toyota Motor Corp. Sec. Litig.*,
No. 10-cv-922, 2011 WL 2675395 (C.D. Cal. July 7, 2011)........................................3

*In re Urban Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Pa. 2015) ..................................................................4

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
620 F. Supp. 3d 167 (D.N.J. 2022) ....................................................................5

*Institutional Invs. Grp. v. Avaya*,
564 F.3d 242 (3d Cir. 2009) ...................................................................... 1, 4, 11

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ..............................................................................3

*Mallozzi v. Innovative Indus. Props., Inc.*,
No. 22-cv-2359, 2023 WL 6121499 (D.N.J. Sept. 19, 2023) ....................................12

*Martin v. GNC Holdings, Inc.*,
757 F. App'x 151 (3d Cir. 2018)........................................................................6

*Monk v. Johnson & Johnson*,
No. 10-cv-4841, 2011 WL 6339824 (D.N.J. Dec. 19, 2011)....................................10

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .............................................................................. 8, 9, 14

*Ong v. Chipotle Mexican Grill, Inc.*,
294 F. Supp. 3d 199 (S.D.N.Y. 2018).................................................................12

*Ortiz v. Canopy Growth Corp.*,
537 F. Supp. 3d 621 (D.N.J. 2021) ....................................................................4

*Roofer's Pension Fund v. Papa*,
No. 16-cv-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ....................................2, 6

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC,*
    351 F. Supp. 3d 874 (E.D. Pa. 2018) ...............................................................4

*SEC v. Rio Tinto PLC,*
    41 F.4th 47 (2d Cir. 2022) ..............................................................................14

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft,*
    No. 20-cv-4737, 2021 WL 4864421 (N.D. Cal. Oct. 19, 2021) .....................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ......................................................................................1, 8

*Winer Family Tr. v. Queen,*
    503 F.3d 319 (3d Cir. 2007) ...........................................................................10

**STATUTES**

15 U.S.C. § 78j (Securities Exchange Act Section 10) ..............................2, 7, 15

15 U.S.C. § 78t (Securities Exchange Act Section 20) ................................. 1, 15

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5(b) (Rule 10b-5) ................................................................10

Fed. R. Civ. P. 9(b) ..............................................................................................13

## PRELIMINARY STATEMENT

The "practical and common-sense perspective" Plaintiffs agree must be used to test the sufficiency of their allegations dooms their claims. *See* MTD Opp. at 31 (quoting *Institutional Invs. Grp. v. Avaya*, 564 F.3d 242, 273 (3d Cir. 2009)). Plaintiffs still offer no motive for any Defendant to commit the serious fraud they allege. Nor have they cited *any* document, oral report, or other information *any* Defendant received warning lead-sheathed cables might well impose material liability on Verizon.

Plaintiffs themselves allege the public nature of the existence of lead-sheathed cables in the old Bell System network and the fact that some cables remained in place. But there is no allegation that Verizon, the Individual Defendants, other phone companies, or the allegedly efficient market thought these public facts equated to a serious risk of material liability. That means any knowledge a Defendant had of those public facts cannot establish "a danger of misleading buyers or sellers that [was] either known" or "so obvious that the actor must have been aware of it." *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999), *abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Beyond scienter, none of the challenged statements are actionable. Some are inactionable opinions. Others are vague or aspirational. And none of the statements—which never mention the sliver of Verizon's legacy copper network believed to be lead sheathed—created any duty to disclose the information Plaintiffs assert was concealed. The cursorily asserted scheme liability and Section 20(a) claims also fail. And because

1

Plaintiffs do not explain how further amendment could cure the Amended Complaint's deficiencies, dismissal with prejudice is warranted.

## ARGUMENT

### I.  Plaintiffs' Section 10(b) Misstatement Claims Fail for Lack of Scienter.

#### A.  Plaintiffs Concede the Absence of Any Motive to Commit Fraud.

As Defendants explained (at 18-19), the 169-page Amended Complaint alleges no motive for any Defendant to defraud investors. Plaintiffs respond (at 30 n.16) only that motive is not an absolute requirement. True enough. But the very "common-sense perspective" Plaintiffs invoke (at 31) dictates that its absence is highly probative. "Without a motive to commit securities fraud, businessmen are unlikely to commit it." *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013). Thus, "the Third Circuit has determined that a failure to demonstrate that individual defendants had a motive for their wrongful conduct is significant." *Roofer's Pension Fund v. Papa*, No. 16-cv-2805, 2018 WL 3601229, at *17 (D.N.J. July 27, 2018) (internal quotation marks omitted). Defendants had no reason to commit fraud and every reason not to.

#### B.  Plaintiffs Fail to Plead Extreme Recklessness by Any Individual Defendant.

Despite Plaintiffs' focus (at 30) on what they think Defendants "should have known," recklessness is "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care" that "presents a danger of misleading buyers and sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Advanta*, 180 F.3d at 535 (internal quotation

2

marks omitted).  And because motive allegations are absent here, "the strength of the circumstantial allegations must be correspondingly greater."  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 238 (3d Cir. 2004) (quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).  Plaintiffs attempt to rely on five arguments to support their purportedly "strong" inference of scienter.  None does anything of the sort.

*First*, Plaintiffs say the "scope of Verizon's potential liability supports an inference of scienter."  MTD Opp. at 32.; *see id.* at 32-34.  But the cases they cite involved contemporaneous red flags that have no parallel here.[1]  Instead, Plaintiffs seek to invoke supposedly "massive liability" based on speculative hindsight and the publicly known information that Verizon's network contains lead-sheathed cables.  They make no allegation of any specific information or warning that any Individual Defendant received, let alone that made the risk of material liability "so obvious that [he] must have been aware of it."  *Advanta*, 180 F.3d at 535.

Plaintiffs also argue (at 33) that recklessness "is further substantiated by representations made about Verizon's loss reserves and contingencies."  The opposite is true.  As Defendants explained (at 27-28), and Plaintiffs ignore, an independent

---

[1] *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-4737, 2021 WL 4864421, at *5 (N.D. Cal. Oct. 19, 2021) ("magnitude of the problems" supported scienter only because of an "array of negative opinions on an acquisition *at the time of the deal, not just in hindsight*" (emphasis added)); *In re Toyota Motor Corp. Sec. Litig.*, No. 10-cv-922, 2011 WL 2675395, at *4 (C.D. Cal. July 7, 2011) (in case involving statements that floor mats caused unexpected acceleration, company "undertook non-floor mat related steps … to address the unintended acceleration problem," and the "unintended acceleration issues were drawing enough media scrutiny," *before* alleged misstatements).

3

auditors' approval that is neither amended nor restated "weighs heavily against scienter." *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 678 (D.N.J. 2021).

*Second*, Plaintiffs say the "content and context" of the Group 2 statements[2] support scienter because they relate to "the implementation of the FIOS network and replacement of Verizon's existing copper infrastructure." MTD Opp. at 34; *see id.* at 34-35. The "content and context" that supported scienter in Plaintiffs' cases, however, included "consistent denials" in response to "specific analyst queries" on the *precise* issue allegedly concealed from the market.[3] Here, by contrast, the "content and context" of the Group 2 statements reflected nothing specific to lead-sheathed cables, but instead referred to the fiscal and environmental benefits of replacing copper cable with fiber-optic cable, which is more energy efficient. MTD at 32; *see infra* Section II.B. Those benefits are unrelated to whether the copper was sheathed in plastic or (far less often) lead, or to whether copper cable was removed or simply disconnected from the network. Thus, nothing about the statements' "content and context" supports any inference— let alone a strong one—that any Defendant defrauded the market.

---

[2] The five groups of alleged misstatements are described and cited at pages 7-11 of Defendants' motion to dismiss.

[3] *Hall v. Johnson & Johnson*, No. 18-cv-1833, 2019 WL 7207491, at *25 (D.N.J. Dec. 27, 2019) ("As alleged, Defendants repeatedly stated that the Talc Products were safe, in the face of … inquiries from the press and investors."); *Avaya*, 564 F.3d at 270 ("specificity and repetition of the analysts' questions" about the very fact allegedly concealed); *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 653 (E.D. Pa. 2015) (similar); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 906 (E.D. Pa. 2018) (context reflected "intimate knowledge of the data" allegedly concealed).

*Third*, Plaintiffs assert (at 35) that the lead-sheathed cables "concern[] Verizon's core operation and chief business driver since the early 2000s." Hardly. Plaintiffs ignore both that three quarters of Verizon's 2022 revenue came from its *wireless* services, *see* MTD at 6,[4] and that even with respect to copper cable replaced by fiber-optic cable, only a small percentage is believed to be lead-sheathed, Compl. ¶ 264.[5] Nor can Plaintiffs back into a core operations inference by arguing (at 35) that "Verizon's abandonment of its lead infrastructure" is the "'other side of the coin' of its signature FIOS network expansion." Plaintiffs allege no facts supporting their *ipse dixit* that the FIOS network is the "signature" of Verizon—a company centered around its wireless services. Nor do they offer any examples of courts treating what was *being replaced* rather than what was *being installed* as a core operation justifying an inference of scienter.[6]

Even if lead-sheathed cables were a core operation, Plaintiffs' own authority confirms that "to support a finding of scienter based upon the core operations doctrine, plaintiff must also allege 'some additional allegation of *specific information conveyed to*

---

[4] The 76% of revenue Plaintiffs cite (at 35) as coming from the Consumer Group is predominantly wireless, not wireline, revenue. *See* MTD at 6.

[5] The case Plaintiffs cite for a core operations inference from a product accounting for 0.3% of sales rested on allegations that "the Company view[ed]" that product "as 'an institution,'" its "'flagship product,'" and a "'sacred cow.'" *Hall*, 2019 WL 7207491, at *21. Nobody at Verizon allegedly said or thought anything like that about lead-sheathed cables—or that they implicated "substantial reputational risk" as in *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 196 (D.N.J. 2022).

[6] For example, in *Allegheny County Employees' Retirement System v. Energy Transfer LP*, 532 F. Supp. 3d 189, 232 (E.D. Pa. 2021), cited by Plaintiffs (at 36), the alleged misstatements concerned the capacity and potential of a new pipeline that was the defendant's biggest capital expenditure—not anything the pipeline was replacing.

*management* and related to the fraud.'" *Hall*, 2019 WL 7207491, at *21 (emphasis added) (quoting *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018)).  Plaintiffs allege no such "specific information conveyed to management." *See id.*

*Fourth*, Plaintiffs argue the Individual Defendants' purported "access to information that contradict[ed] their statements" supports scienter.  MTD Opp. at 37 (alteration in original).  But the only alleged internal information is merely "blueprints" used by "field workers" reflecting the locations of lead-sheathed cables, Compl. ¶¶ 99-102 (cited by MTD Opp. at 37), which no alleged misstatement contradicts.  Even if some arguable inconsistency existed, mere access is not enough.  *See Roofer's Pension Fund*, 2018 WL 3601229, at *19 ("contemporaneous access to information contradicting" an alleged misstatement insufficient where "no internal reports, documents, or communications … point to Defendants' knowledge").  But that is all Plaintiffs allege—not that any Individual Defendant reviewed or even knew of any such granular records, nor that doing so would have made them aware of a risk of material liability.

Plaintiffs' argument (at 37-38) that the Individual Defendants must have been aware of union complaints about the alleged dangers of lead-sheathed cables also misses the mark.  There is no allegation that any Individual Defendant—many of whom did not join Verizon until after the referenced 2015 union filings, *see* MTD at 1 n.1—was aware of them.  Even if they were, Defendants would have no reason to think that these public filings reflected a risk of liability, let alone one so large as to be material to Verizon in light of its over $130 billion in annual revenue.

6

*Fifth*, Plaintiffs point to Defendants' supposed "fail[ure] to check information they had a duty to monitor." MTD Opp. at 38 (alteration in original). But that argument, too, rests entirely on speculative hindsight. The fact remains that there is no allegation that anyone at Verizon, any other company, or the efficient market believed that the well-known existence of lead-sheathed cables—including those abandoned in place—created a risk of material liability. Even if all of those parties—including the Individual Defendants—were wrong about that, an honest mistake or even negligence as to the truth or falsity of a statement is not enough.[7] And given the consensus of all these various parties, it simply cannot be that any risk was "so obvious that [they] must have been aware of it." *See Advanta*, 180 F.3d at 535.

\* \* \*

Plaintiffs' scienter allegations are strikingly unindividualized. Just like the Amended Complaint, *see* MTD at 21-23, their response brief treats the Individual Defendants as fungible, with each argument boiling down to the same undifferentiated theory: as a senior executive, each of them somehow "must have known" that lead-sheathed cables posed a material liability risk to the Company. That is not the stuff of a "cogent and … compelling" inference of "scienter, a mental state embracing intent to

---

[7] Plaintiffs' argument (at 32 n.17) that Section 10(b) can prohibit "false or misleading statements" about merely negligent conduct misses the point. Defendants' argument is that even if any alleged misstatement was actionably misleading, *but see infra* Section II, each Defendant's mental state *with respect to the falsity of each statement* was innocent or, at most, negligent—not reckless or intentionally fraudulent as Section 10(b) requires.

7

deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319, 324 (internal quotation marks omitted).  After all, "[g]eneralized imputations of knowledge do not suffice, regardless of the defendants' positions within the company." *Advanta*, 180 F.3d at 539.  Because Plaintiffs allege nothing more, the Court should dismiss for lack of scienter.

> **C.      Plaintiffs Also Fail to Plead Verizon's Scienter.**

Plaintiffs unpersuasively claim to have pleaded Verizon's scienter in two ways. They first argue (at 39) for imputation of the Individual Defendants' scienter to Verizon. No Individual Defendant, however, had any scienter to impute.  *See supra* Section I.B. Plaintiffs then argue that Verizon's scienter can be inferred from the purported "pervasiveness of the fraud, … conscious misbehavior of the particular corporate employees, and … complicity of the corporate entities."  MTD Opp. at 39.  But there are no adequate allegations of the "conscious misbehavior" that this theory relies on for any Individual Defendant (or anyone else).  *See supra* Section I.B; *see also* MTD at 23 (explaining how even this "broad[]" theory of corporate scienter requires "connective tissue" that is lacking here).

## II.    None of the Alleged Misstatements Are Actionable.

> **A.      The Group 1 Statements Are Inactionable Opinions.**

As Defendants explained (at 30-31), the alleged misstatements about accounting reserves are opinions that are not actionable under any of *Omnicare*'s three prongs.  *See Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). Plaintiffs incorrectly dispute both *Omnicare*'s applicability and its application.

As to the first, Plaintiffs agree (at 28) that "when the stated amount of reserves is challenged, not on the factual ground that [an] indicated amount is not actually set aside, but for the sufficiency of that set-aside … , the stated reserve amount, as a manifestation of actuarial judgment, functions as an opinion." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 684 (3d Cir. 2023). But Plaintiffs do not allege that Defendants claimed to have set aside a particular amount for lead-sheathed-cable costs without actually setting aside that amount. Compl. ¶ 309. Instead, they challenge a "judgment" of "the sufficiency of th[e] set-aside"—the epitome of an opinion statement. *See City of Warren*, 70 F.4th at 684.

Plaintiffs next assert that if these statements are opinions, they are actionable under *Omnicare*'s second prong because, they say (at 29), the statements embed the assertion that "Verizon had analyzed" and "set aside reserves" for "risks associated with its lead-sheathed cable network." But the statements say no such thing, much less expressly, Compl. ¶ 309, and *City of Warren* holds that this prong applies only where a statement "*expressly* embed[s]" an untruth. 70 F.4th at 686 (emphasis added).

Plaintiffs' argument under *Omnicare*'s third prong also fails. They assert (at 29) that these statements "involve omissions … that rendered the statements materially misleading." But as Defendants noted (at 31), and Plaintiffs ignore, the Amended Complaint says nothing about the reserve-setting process. By failing to allege what the "basis for the … opinion" is, Plaintiffs also fail to meet *Omnicare*'s requirement to "identify particular (and material) facts going to [that] basis." *See* 575 U.S. at 194.

9

## B.    The Group 2 Statements Lack Particularity.

As Defendants explained (at 31-33), the Group 2 statements about the benefits of switching to fiber-optic cable never mention lead sheathing—nor did Rule 10b-5 require them to—because lead sheathing was irrelevant to the points being made. Plaintiffs insist (at 18) that the "mere fact that these statements mention copper cables gives rise to [a] duty" to discuss lead sheathing.  But the only facts Rule 10b-5 forbids a party to "omit" are those "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."    17 C.F.R. § 240.10b-5(b).  Thus, "revealing one fact about a product" does not require one to "reveal all others," even if they, "too, would be interesting." *Winer Family Tr. v. Queen*, 503 F.3d 319, 330 (3d Cir. 2007) (internal quotation marks omitted).  Indeed, each of Plaintiffs' cited cases involved statements that were much more closely connected to the allegedly omitted fact than is the case here.[8]  By contrast, any costs that may accrue from lead-sheathed cables have nothing to do with the lower costs and emissions that result from the greater *energy efficiency* of fiber-optic cables.

---

[8] *Monk v. Johnson & Johnson*, No. 10-cv-4841, 2011 WL 6339824, at *23 (D.N.J. Dec. 19, 2011) (defendant responded to a question about *systemic* quality control problems by emphasizing that shortcomings were "*very specific to [a] particular facility*"); *In re Bristol-Myers Squibb Sec. Litig.*, No. 00-cv-1990, 2005 WL 2007004, at *39 (D.N.J. Aug. 17, 2005) (company discussed "the most commonly reported side-effects" of a drug candidate "without mentioning a side effect that was the subject of substantial attention and concern" at the company); *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 16-cv-9449, 2019 WL 3562134, at *10 (D.N.J. Aug. 6, 2019) (statements attributing strong revenues to a variety of "legitimate business factors," without disclosing that the revenue (allegedly) derived from illegal anticompetitive conduct).

10

Plaintiffs also argue (at 18-19) that mentioning the replacement of copper cable required Defendants to disclose that some lead-sheathed cable was retired in place. But none of the statements specifically addressed the small portion of copper cable believed to be lead-sheathed, nor could they have been rendered misleading by any unrelated issues that may have arisen with the lead sheathing—especially as Plaintiffs themselves allege the cables' presence was obvious. *See, e.g.*, Compl. ¶ 97.

Defendants' point is not, as Plaintiffs claim (at 21), that omitted information must "outweigh" the stated information. Rather, the only way that the accurate claims of fiscal and environmental benefits here could be actionable would be if contemporaneous estimates of potential lead-sheathed cable costs were large enough relative to those benefits to make the statements about the benefits misleading. Without even attempting to quantify either side of the ledger, Plaintiffs cannot answer the key question of "how" the statements were misleading. *See Avaya*, 564 F.3d at 253.

## C.    The Group 3 Statements Are Inactionably Vague and General.

As Defendants explained (at 33-35), the general Group 3 statements about safety and training are too vague to be actionable. Plaintiffs' argument (at 25-26) that they are actionable because "Verizon consistently touted its status and reputation as an environmentally responsible business that provides a safe and healthy workplace" fails because, regardless of repetition, these statements "read like mission statements rather than guarantees." *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 547 (W.D. Pa. 2019); *see, e.g.*, Compl. ¶ 328 ("[We] recognize that … promoting … the well-being and health of

11

our … employees … is fundamental to the long-term success of Verizon."). Such "general and non-quantitative statements … are vague" and thus inactionable; they neither provide "specific numbers" nor "repeatedly address subjects" such that they "may go beyond the general and vague." *See Mallozzi v. Innovative Indus. Props., Inc.*, No. 22-cv-2359, 2023 WL 6121499, at *11 (D.N.J. Sept. 19, 2023).

To be sure, Defendants did provide some "specific numbers" in the form of Verizon's "occupational injuries and illnesses rate." Compl. ¶¶ 330, 336, 338. But Plaintiffs never assert that these rates were in any way false, or explain how it is actionably misleading for a company with a good safety record to state its commitment to employee safety. The mere fact that programs are imperfect does not mean that a company is not committed to them. *See, e.g., Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018).

**D.    The Group 4 Statements Are Inactionable for Multiple Reasons.**

As Defendants explained (at 35-38), none of the Group 4 statements about recycling goals and practices addressed lead-sheathed cables specifically or claimed such cables were never retired in place. As a result, there was no need to clarify those statements to avoid misleading the market. Plaintiffs' conclusory insistence otherwise (at 23-24) simply ignores this fundamental flaw of their theory.

Plaintiffs also fail to effectively rebut the additional reasons that each Group 4 statement is inactionable. *See* MTD at 37-38. Plaintiffs argue that the first two of these statements are not puffery because, in their view, "statements about 'responsibly

12

recycling' the Company's 'network equipment' … were 'specific assertions' regarding a discrete practice." MTD Opp. at 23-24. But that ignores that both statements spoke in terms of Verizon's goals and aspirations, not promises for every piece of network equipment. *See* Compl. ¶ 343 (Verizon "*continue[s] to work to reduce* the environmental impact of our products" (emphasis altered)), ¶ 347 (Verizon's "*goal* is to divert *as much e-waste as possible* from landfills by reusing or responsibly recycling materials" (emphasis added)). As a matter of law, such explicitly "aspirational goal statements" are "not the type of assertions upon which a reasonable investor would rely." *Hall*, 2019 WL 7207491, at *15; *see also Howard*, 395 F. Supp. 3d at 547.

The third Group 4 statement—about "exceed[ing] regulatory mandates" or meeting "high industry standards"—is also inactionable. *See* Compl. ¶ 350. Plaintiffs never allege what those mandates or standards are, let alone how they have not been exceeded or met, so they have failed to explain with particularity why the statement was misleading. Rather than confronting this issue, Plaintiffs just assert (at 24-25) that this "statement would mislead a reasonable investor about Verizon's abandonment and dumping of lead-sheathed cables." That bare conclusion fails to explain with particularity "how" the statement was misleading, as Rule 9(b) and the PSLRA require.

Finally, by ignoring Defendants' argument (at 38) that "Plaintiffs have failed to allege with particularity 'the reasons why' giving accurate statistics about recycling e-waste generally and other specific categories of e-waste" was misleading in context, Plaintiffs concede that the fourth Group 4 statement is inactionable. *See* Compl. ¶ 352.

13

E.    **The Group 5 Statements Are Inactionable Opinions.**

As Defendants explained (at 38-39), the Group 5 statements regarding GAAP compliance are inactionable opinions.  Plaintiffs' argument (at 29-30) under the second *Omnicare* prong that these statements "posited an embedded fact that the Company did not face contingent liabilities related to its lead-sheathed cables" fails because the statements do not "expressly" say any such thing.  *City of Warren*, 70 F.4th at 686.  And their prong-three argument (at 30) that "the GAAP statements omitted mention of lead-sheathed cables" says nothing about the process for assessing GAAP compliance, and therefore fails to "identify particular (and material) facts going to the basis" for that opinion, as *Omnicare* demands.  575 U.S. at 194.  Plaintiffs' position on the Group 5 statements is also undermined by the independent auditors' agreement that the annual reports' financial statements comply with GAAP.  *E.g.*, MTD Ex. 1 at 52.

III.    **Plaintiffs' Scheme Liability Claims Fail for Multiple Reasons.**

Plaintiffs do not dispute that a lack of scienter for their misstatement claims would doom their scheme claims as well.  MTD Opp. at 39.  Nor can they rest a scheme claim on the alleged misstatements without impermissibly duplicating the misstatement claims.  *E.g.*, *SEC v. Rio Tinto PLC*, 41 F.4th 47, 53 (2d Cir. 2022).  Their argument (at 40) that they have pled—distinct from alleged misstatements—that "Verizon engaged in a routine practice to 'abandon' and 'retire' lead cables … and hid this practice and the associated risks of financial losses to investors" is inconsistent with the Amended Complaint, which alleges these practices were widely known, *see, e.g.*, Compl. ¶¶ 94-95.

14

## IV.    Plaintiffs' Section 20(a) Claims Fail for Multiple Reasons.

Plaintiffs do not dispute that their Section 20(a) claims fail if their Section 10(b) claims fail. *See* MTD Opp. at 40.  And several years after *In re Able Laboratories Securities Litigation*, No. 05-cv-2681, 2008 WL 1967509, at *29 (D.N.J. Mar. 24, 2008), the case Plaintiffs cite for culpable participation not needing to be pled, the Third Circuit declined to resolve a district court split on that topic.  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 n.20 (3d. Cir. 2013).  But the "recent decisions of … courts in this Circuit … require a plaintiff to plead … culpable participation."  *Howard v. Arconic Inc.*, No. 17-cv-1057, 2021 WL 2561895, at *29 (W.D. Pa. June 23, 2021) (collecting cases). Plaintiffs have not alleged knowledge of fraud, so they have not pled this element. *Belmont*, 708 F.3d at 484, 486.  Their Section 20(a) claims fail for this reason too.

## V.    Dismissal of the Case Should Be with Prejudice.

The Amended Complaint's flaws are incurable because, among other reasons, no amendment could adequately plead that any alleged misstatement created a duty to disclose the facts Plaintiffs accuse Defendants of omitting.  Dismissal with prejudice is thus warranted, especially because Plaintiffs have not explained how they would amend. *Cf. In re Ocugen, Inc. Sec. Litig.*, No. 23-1570, 2024 WL 1209513, at *6 (3d Cir. Mar. 21, 2024) (denial of leave to amend proper where a plaintiff "does not attach a draft amended complaint to its motion or explain how it would amend the pleading").

## CONCLUSION

The Court should grant Defendants' motion to dismiss with prejudice.

Dated: Newark, New Jersey
         May 31, 2024

Respectfully submitted,


/s/ *Lawrence S. Lustberg*

Lawrence S. Lustberg
Samuel I. Portnoy
Michael V. Caracappa
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545

Geoffrey J. Ritts (*pro hac vice*)
Adrienne Ferraro Mueller (*pro hac vice*)
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Tel: (216) 586-3939
Fax: (216) 579-0212

Nina Yadava (*pro hac vice*)
Jennifer L. Del Medico
**JONES DAY**
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3690
Fax: (212) 755-7306

*Attorneys for Defendants*

16