# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STICHTING PENSIOENFONDS METAAL EN TECHNIEK; STICHTING PME PENSIOENFONDS; STICHTING MN SERVICES AANDELENFONDS NOORD-AMERIKA; AKADEMIKERPENSION; LANNEBO KAPITALFÖRVALTNING AB; and STOREBRAND ASSET MANAGEMENT AS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC., HANS VESTBERG, MATTHEW ELLIS, KYLE MALADY, JAMES GOWEN and ANTHONY SKIADAS,<br><br>Defendants. | No. 1:23-cv-5218 (ESK) (AMD)<br>*Document Filed Electronically* |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Geoffrey J. Ritts (*pro hac vice*)
Adrienne Ferraro Mueller (*pro hac vice*)
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939

Nina Yadava (*pro hac vice*)
Jennifer L. Del Medico
**JONES DAY**
250 Vesey Street
New York, New York 10281
(212) 326-3746

Lawrence S. Lustberg
Samuel I. Portnoy
Michael V. Caracappa
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4909

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................. 1

    I.     Plaintiffs Have Not Adequately Alleged Scienter ....................................... 1

          A.    Defendants' Incentives Undercut Any Inference Of Scienter. ........................................................................................ 2

          B.    Plaintiffs Fail To Rebut The Natural, Nonculpable Inference. ..................................................................................... 4

          C.    None Of Plaintiffs' Five Arguments Makes An Inference Of Scienter Cogent And Compelling. ............................................. 5

          D.    Plaintiffs Have Failed To Allege Verizon's Scienter ...................... 8

    II.    None Of The Alleged Misstatements Are Actionable .............................. 9

          A.    The Group 1 Statements Are Not False Or Misleading. .............. 9

          B.    The Group 2 Statements Are Not False Or Misleading. ............. 13

          C.    The Group 3 Statements Are Not False Or Misleading. ............. 14

    III.   Plaintiffs' Scheme Liability Claim Fails For Multiple Reasons. .............. 15

    IV.   Plaintiffs' Section 20(a) Claim Fails For Multiple Reasons. .................... 15

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d. Cir. 2013) .......................................................................................... 15

*Bucks Cty. Emps. Ret. Sys. v. Norfolk S. Corp.*,
  775 F. Supp 3d 1275 (N.D. Ga. 2025) ............................................................................ 6

*City of Warwick Ret. Sys. v. Catalent, Inc.*,
  No. 23-cv-1108, 2024 WL 3219616 (D.N.J. June 28, 2024) ........................................ 6

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ........................................................................................... 2

*Holwill v. Abbvie Inc.*,
  No. 18-cv-6790, 2025 WL 1908156 (N.D. Ill. July 10, 2025) ...................................... 3

*Howard v. Arconic Inc.*,
  395 F. Supp. 3d 516 (W.D. Pa. 2019) ........................................................................... 11

*Howard v. Arconic Inc.*,
  No. 17-cv-1057, 2021 WL 2561895 (W.D. Pa. June 23, 2021) .................................. 15

*In re Apple Inc. Sec. Litig.*,
  No. 19-cv-2033, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ..................................... 6

*In re AT&T Inc. Sec. Litig.*,
  No. 24-cv-1196, 2025 WL 1685840 (N.D. Tex. June 16, 2025) ............................... 13

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
  No. 16-cv-6509, 2018 WL 3772675 (D.N.J. Aug. 8, 2018) .......................................... 9

*In re Coinbase Glob., Inc. Sec. Litig.*,
  No. 22-cv-4915, 2024 WL 4053009 (D.N.J. Sept. 5, 2024) ..................................... 3, 8

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ................................................................ 3

*In re Lumen Techs., Inc. Sec. Litig. II*,
    No. 23-cv-1290, 2025 WL 978229 (W.D. La. Mar. 14, 2025) (R&R),
    *adopted in full*, 2025 WL 971749 (W.D. La. Mar. 31, 2025),
    *appeal pending*, No. 25-30264 (5th Cir.) ...................................................... 5, 11

*In re Maiden Holdings, Ltd. Sec. Litig.*,
    __ F.4th __, No. 24-1118, 2025 WL 2406864 (3d Cir. Aug. 20, 2025) ............... 9, 12

*In re Marsh & Mclennan Cos. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) .......................................................... 8

*In re Mylan N.V. Sec. Litig.*,
    No. 20-cv-955, 2025 WL 1874621 (W.D. Pa. July 8, 2025) ............................... 11, 15

*In re Teva Sec. Litig.*,
    671 F. Supp. 3d 147 (D. Conn. 2023) .......................................................... 8

*In re Urban Outfitters, Inc. Sec. Litig.*,
    103 F. Supp. 3d 635 (E.D. Pa. 2015) .......................................................... 6

*Institutional Invs. Grp. v. Avaya*,
    564 F.3d 242 (3d Cir. 2009) ............................................................... 1, 2, 5, 7

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) .................................................................. 3

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018) .......................................................... 13

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ................................................................. 3

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) .................................................................. 8

*Roofer's Pension Fund v. Papa*,
    687 F. Supp. 3d 604 (D.N.J. 2023) ................................................................. 9

*Roofer's Pension Fund v. Papa*,
    No. 16-cv-2805, 2018 WL 3601229 (D.N.J. July 27, 2018)........................................ 7

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
    351 F. Supp. 3d 874 (E.D. Pa. 2018)................................................................. 6

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
    No. 20-cv-4737, 2021 WL 4864421 (N.D. Cal. Oct. 19, 2021) ................................... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................................... 5

*Tuchman v. DSC Commcn's Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ......................................................................... 3

*Wu v. GSX Techedu Inc.*,
    738 F. Supp. 3d 527 (D.N.J. 2024) .................................................................. 7

**STATUTES**

15 U.S.C. § 78t (Exchange Act Section 20)........................................................ 15

**OTHER AUTHORITIES**

17 C.F.R. § 240.10b-5 (Exchange Act Rule 10b-5) ............................................. 15

**PRELIMINARY STATEMENT**

While Plaintiffs claim that the SAC is no "mere reprisal" of the prior Complaint, MTD Opp. at 3-4, simply reshuffling allegations to different places in the pleading cannot disguise that almost none of the alleged facts Plaintiffs cite are new. Even what little is—such as adding three new purported confidential witnesses to the twenty-nine from the prior Complaint—closely tracks what had already been alleged. As for Plaintiffs' response brief, it applies incorrect legal standards and badly overreads its cited authority. Because Plaintiffs have not—and cannot—overcome the defects that led the Court to dismiss the prior Complaint, or the further shortcomings noted in Defendants' motion to dismiss the SAC, the case should be dismissed with prejudice.

**ARGUMENT**

**I.    Plaintiffs Have Not Adequately Alleged Scienter.**

Plaintiffs' scienter arguments start off by citing the wrong standard, and only go downhill from there. Plaintiffs assert that scienter can be adequately alleged by pleading "that defendants knew or, more importantly, *should have known* that they were misrepresenting material facts related to the corporation." MTD Opp. at 28 (emphasis added; internal quotation marks omitted). That negligence-based standard, however, flatly contradicts binding Third Circuit law.

As this Court has recognized, the PSLRA demands "'a mental state embracing intent to deceive, manipulate, or defraud, and requires a knowing or reckless state of mind.'" Dkt. No. 77 at 22 (quoting *Institutional Invs. Grp. v. Avaya*, 564 F.3d 242, 252

1

(3d Cir. 2009)). "[A] reckless statement is one 'involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Id.* (quoting *Avaya*, 564 F.3d at 267 n.42). That is why, as this Court has already explained, "'[c]laims essentially grounded on corporate mismanagement'"—claims about what executives *should have* realized, rather than what they actually did—"do not adequately plead recklessness." *Id.* (quoting *Avaya*, 564 F.3d at 267 n.42).

At the absolute most, that is all Plaintiffs have alleged here. Plaintiffs claim that Defendants knowingly or recklessly misled the market about material risks that lead-sheathed cables supposedly posed to the company. But their attempts to explain *why* Defendants would have done so make no sense, and they do not dispute the absence of any allegation that any Defendant actually believed that lead-sheathed cables posed a material risk to Verizon. That is not a "cogent and compelling" inference of scienter.

## A.   Defendants' Incentives Undercut Any Inference Of Scienter.

On motive, Plaintiffs claim only: (1) that Defendants' receipt of incentive compensation supports an inference of scienter; and (2) that Defendants' accumulation of stock does not undermine that inference. MTD Opp. at 34. Both arguments fail.

*First*, because "motives that are generally possessed by most corporate directors and officers do not suffice" to support an inference of scienter, *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (brackets omitted), courts routinely hold

2

that "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated," *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 284 (D.N.J. 2007) (quoting *Tuchman v. DSC Commc'n's Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  *See* MTD at 17-18. Plaintiffs ignore this authority.  And even setting aside allegations in the two cases they cite, *see* MTD Opp. at 34, that are far more specific than anything here, *see, e.g., In re Coinbase Glob., Inc. Sec. Litig.*, No. 22-cv-4915, 2024 WL 4053009, at *2, *16 (D.N.J. Sept. 5, 2024) ("maintain[ing] certain stock prices for 60 trading days … unlock[ed]" options worth hundreds of millions of dollars), Plaintiffs fail to contend with the straightforward logic that "an allegation that defendants were motivated by a desire to maintain or increase executive compensation is insufficient because such a desire can be imputed to all corporate officers." *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).

*Second*, Plaintiffs fail to persuasively rebut the common-sense point that "[t]he fact that the defendants accumulated rather than dumped shares during the class period undermines the notion that they intentionally, knowingly, or recklessly misled investors." *Holwill v. Abbvie Inc.*, No. 18-cv-6790, 2025 WL 1908156, at *17 (N.D. Ill. July 10, 2025). Plaintiffs assert only that because, on their theory of fraud, it would be uncertain "when bad news would be revealed," Defendants had no particular deadline by which to sell their stock at inflated prices.  MTD Opp. at 34 n.9.  But knowingly accumulating stock at inflated prices is nonsensical regardless; doing so provides no benefit and risks "los[ing] a lot of money" when the supposed truth comes out and "the value of [the company's] stock falls." *Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008).

3

**B.      Plaintiffs Fail To Rebut The Natural, Nonculpable Inference.**

The shortcomings of Plaintiffs' attempt to allege scienter circumstantially also persist.  Plaintiffs still "fail to allege … that there was specific information conveyed to management and related to fraud," that "any of the individual defendants had actual knowledge of the liability associated with lead[-sheathed] cables," or that "they believed the liability was so material that omitting information relating to it would be misleading." Dkt. No. 77 at 27, 29 (internal quotation marks omitted); *see* MTD at 24-25.  Nor is recklessness adequately pled.  Plaintiffs never claim anyone in the telecommunications industry—let alone at Verizon—actually believed lead-sheathed cables posed a threat of material liability at the relevant time.  That compels the conclusion that any misstatement made (none were, *see infra* Section II) was innocent or at most negligent— something that in hindsight should have been known, not so obvious it must have been.

Plaintiffs' limited attempts to rebut this straightforward, non-culpable inference are unpersuasive.  *First*, that the stock price later fell after some (but not all) of the Wall Street Journal articles, *see* MTD Opp. at 37, has nothing to do with any Defendant's mental state at the time of the statements.  By contrast, Plaintiffs' sole cited case involved an "array of negative opinions on an acquisition at the time of the [statements], not just in hindsight."  *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-cv-4737, 2021 WL 4864421, at *5 (N.D. Cal. Oct. 19, 2021).

*Second*, that Verizon purportedly analyzed whether to leave specific cables in place, *see* MTD Opp. at 37-38, does not mean the conclusions reached were wrong, let alone

4

that any challenged statement was reckless.  *See In re Lumen Techs., Inc. Sec. Litig. II*, No. 23-cv-1290, 2025 WL 978229, at \*21 (W.D. La. Mar. 14, 2025) (R&R) ("[T]he decision to leave the cables in place arguably was a sound one that had the effect of limit[ing] the further spread of toxic lead … .  In fact, the jury is still out as to what the best course of action is, i.e., removal and remediation or retire the cables in place."), *adopted in full*, 2025 WL 971749 (W.D. La. Mar. 31, 2025), *appeal pending*, No. 25-30264 (5th Cir.).

*Third*, even if the language some Defendants used to describe the transition from copper to fiber-optic cable could arguably be read to refer to physical removal rather than mere replacement in Verizon's network, *see* MTD Opp. at 38; *but see infra* Section II.A, these statements say nothing about the core scienter question of what the Defendants knew or must have known about any material risk from any copper cable (lead-sheathed or otherwise) left in place.  Regardless, these statements were at most ambiguous, and "ambiguities count against inferring scienter." *Avaya*, 564 F.3d at 263 (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007)).

## C.    None Of Plaintiffs' Five Arguments Makes An Inference Of Scienter Cogent And Compelling.

The five sets of arguments Plaintiffs' response brief asserts as supposed affirmative support for its inference of scienter also fail to persuade.

*First*, Plaintiffs point to supposed "Corporate Admissions" from after the putative class period—that some phone cables have lead sheathing, and that some such cables remained in place—that say nothing that was not already known.  *See* MTD Opp.

at 28-30. As Defendants explained, and Plaintiffs ignore, the SAC itself alleges that the continued presence of lead-sheathed cables in the environment—including those no longer in use—was well known and publicly observable. MTD at 32 (citing SAC ¶¶ 82, 86). Further post-putative-class-period confirmation of these cables' existence cannot support an inference—let alone a "cogent and compelling" one—that any defendant knew or must have known of a risk of material liability and sought to conceal it.[1]

*Second*, Plaintiffs point to what they term "Defendants' Public Assurances," but which amount to little more than a recounting of the alleged misstatements. MTD Opp. at 30-32. Plaintiffs' suggestion that scienter can be inferred merely because a defendant makes a statement—or makes it repeatedly—would read the scienter element out of the statute. Nor does anything in these particular statements' "content or context" show scienter. *See* Dkt. No. 77 at 26 (rejecting Plaintiffs' "content and context" argument). Scant surprise, then, that Plaintiffs' cited cases are readily distinguishable.[2]

---

[1] Plaintiffs' cited cases, by contrast, involved information that was not already known, *Bucks Cty. Emps. Ret. Sys. v. Norfolk S. Corp.*, 775 F. Supp. 3d 1275, 1292 (N.D. Ga. 2025) (description of internal "near-term focus … solely on profits" contradicting statements about prioritizing safety), or explicitly described what the company had known at the time of the alleged misstatements, *In re Apple Inc. Sec. Litig.*, No. 19-cv-2033, 2020 WL 6482014, at *10 (N.D. Cal. Nov. 4, 2020) (explaining that, by contrast, "fail[ing] to anticipate the extent of [an issue]" does not support scienter).

[2] *See City of Warwick Ret. Sys. v. Catalent, Inc.*, No. 23-cv-1108, 2024 WL 3219616, at *14 (D.N.J. June 28, 2024) (resting primarily on "many specific allegations that the individual Defendants were made aware of certain situations"); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 894, 906 (E.D. Pa. 2018) (individual defendants discussed data from the very studies plaintiff argued made the alleged misstatements misleading); *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 653 (E.D. Pa. 2015) (direct responses to repeated, unambiguous questions).

6

*Third*, Plaintiffs attempt to rest on "Defendants' Access to Information."  MTD Opp. at 32.  But as Defendants explained, and Plaintiffs ignore, the files Plaintiffs reference did not reflect a material risk of liability, nor does the SAC make any allegation that the high-ranking corporate Defendants actually reviewed this "minute, street-level detail," *id.*, or that it was reckless for them not to do so.  *See* MTD at 22 n.9.  In any event, as the Court held the first time around, and Plaintiffs give no reason to reconsider, "the individual defendants merely having access to information related to Verizon's lead-sheathed cables is insufficient to show scienter."  Dkt. No. 77 at 28 (citing *Roofer's Pension Fund v. Papa*, No. 16-cv-2805, 2018 WL 3601229, at *19 (D.N.J. July 27, 2018)).

*Fourth*, Plaintiffs point to what they describe as the "Magnitude of Financial Impact."  MTD Opp. at 32-33.  But as the Court has already held, and Plaintiffs again fail to acknowledge, the supposedly "'massive scope' of liability exceeding $1 billion that plaintiffs allege … is required to remove lead-sheathed cables does not demonstrate that [the Defendants] … had personal knowledge" of any such purported liability.  Dkt. No. 77 at 24.  Post-hoc guesses of liability—particularly guesses whose widely varying nature calls their reliability into serious question, *see* SAC ¶¶ 227-233 (estimates varying by as much as twenty-five-fold)—cannot retroactively turn a risk of material liability nobody in the industry believed existed into one that was "so obvious that the [defendants] must have been aware of it."  *See Avaya*, 564 F.3d at 267 n.42.[3]

---

[3] Plaintiffs' cited cases are again readily distinguishable.  In *Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 564-65 (D.N.J. 2024), the court found scienter where it was "alleged

7

*Fifth*, Plaintiffs reprise their "core segment" argument that the fiber-optic transition's importance somehow supports scienter. MTD Opp. at 33. But as the Court has held, this argument fails for lack of "specific information conveyed to management and related to [the] fraud." Dkt. No. 77 at 27 (quoting *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013)). That distinguishes *Coinbase*, which treated the core operations doctrine as a mere "additional[]" factor after finding sufficient allegations of "reckless and/or conscious behavior" to "support[] a strong inference of scienter." *See Coinbase*, 2024 WL 4053009, at *15-16. In any event, as Plaintiffs again ignore, Verizon's core business is wireless products and services, which account for almost three-quarters of its revenue, and has nothing to do with lead-sheathed cables. *See* MTD at 6, 23-24.

## D.    Plaintiffs Have Failed To Allege Verizon's Scienter.

Because Plaintiffs have failed to allege scienter as to the Individual Defendants, no individual's scienter can be imputed to Verizon. Nor does Plaintiffs' cursory attempt to invoke the doctrine of corporate scienter hold water. *See* MTD Opp. at 35-36. Aside from the fact that the SAC never pleads this theory of scienter, *see* MTD at 26, Plaintiffs fail to allege any "connective tissue" between somebody with scienter and the alleged

---

that the [individual defendants] were repeatedly and directly presented with detailed information" contradicting their statements. Nor does the fact that a variety of supposed "experts" quickly developed wildly varying estimates say anything about the Defendants' state of mind. *Contra In re Teva Sec. Litig.*, 671 F. Supp. 3d 147, 210 (D. Conn. 2023) (citing a case, *In re Marsh & Mclennan Cos. Securities Litigation*, 501 F. Supp. 2d 452, 486 (S.D.N.Y. 2006), in which the "rapid discovery of misconduct" gave rise to an inference of scienter only in combination with—and only starting on the date of—awareness of a government investigation into similar allegations).

misstatements. *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 632 (D.N.J. 2023). Plaintiffs' claims of supposed "pervasiveness of the fraud," "conscious misbehavior of the particular corporate employees," or "complicity of the corporate entities," *see* MTD Opp. at 35 (quoting *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-cv-6509, 2018 WL 3772675, at [*31] (D.N.J. Aug. 8, 2018)), also fail because, as noted above, there is no allegation that anyone at Verizon thought a material risk of lead-sheathed cable liability existed, and thus no "pervasive[] … fraud," "conscious misbehavior," or "complicity."

## II.    None Of The Alleged Misstatements Are Actionable.

Because the SAC falls far short of adequately pleading scienter, the Court need go no further. But if the Court chooses to do so, the SAC fails to plead falsity as well.[4]

## A.    The Group 1 Statements Are Not False Or Misleading.

Plaintiffs' falsity theories for the Group 1 statements rest on transparently implausible readings of those statements. Plaintiffs primarily argue these statements conveyed that, as part of the transition to fiber-optic cable, Verizon would remove all lead-sheathed cable from the environment. That is not a plausible reading of what any of the Group 1 statements say. To start, as Plaintiffs concede, the statements do not "explicitly mention[] lead" at all, MTD Opp. at 20—they refer at most to copper cable, only a small fraction of which is sheathed in lead. As the Court has already held, alleging

---

[4] Plaintiffs' August 29 letter, and the case it cites, Dkt No. 84 (citing *In re Maiden Holdings, Ltd. Sec. Litig*, __ F.4th __, No. 24-1118, 2025 WL 2406864 (3d Cir. Aug. 20, 2025)), are irrelevant because the standard the Third Circuit rejected in that case was not employed by the Court in its prior dismissal order or advocated for by Defendants at any point.

9

that defendants "did not mention that legacy copper cables were encased in lead" does "not allege with particularity 'how' the omission was misleading." Dkt. No. 77 at 13.

Even setting aside the absence of any reference to lead, the context of every one of these seven alleged misstatements makes plain that what was at issue was the removal of copper cable *from the network*, not *from the environment*. Most refer explicitly to costs of using copper cable or benefits of using fiber-optic cable that turn on what is being used in the network. *See* SAC ¶ 261 (noting that copper cable is "expensive *to operate*" (emphasis added)), ¶ 274 ("benefit of putting fiber in … from a speed resiliency" perspective), ¶ 278 ("trying to save energy"); ¶ 257 ("as you replace in a certain location copper with fiber, there's a good benefit from a cost standpoint"), ¶ 266 ("cost benefits"), ¶ 271 ("maintenance … becomes a lot easier on the fiber side"). None of these operating cost or benefit considerations is affected by whether the copper cable stays in place or is physically removed after it is disconnected from the network.

Some of the statements make the "network" context even more explicit. One, for example, describes how Verizon was "evolving the *architecture of [its] networks*," and how "*this new architecture* will simplify operations by eliminating legacy network elements." SAC ¶ 253. Another responded to an analyst's comment that "sometimes you can get Fios or maybe down the street, you can't," and his question of whether Verizon was "kind of completing the communities." SAC ¶ 257. In context, responding that Verizon's "long-term goal" included "replac[ing] in a certain location copper with fiber" simply confirmed the aim to increase the fiber-optic FiOS network's penetration. *Id.*

10

In short, in context, the Group 1 statements are all plainly about taking copper cable out of the network, not out of the environment. Even if a reasonable investor's interpretation of an alleged misstatement may sometimes present a fact question, *see* MTD Opp. at 21, here "Plaintiffs have not plausibly alleged that a reasonable investor would read [the alleged misstatements] to mean [what Plaintiffs claim they do]." *See Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 544 (W.D. Pa. 2019).[5]

That conclusion is only reinforced by Plaintiffs' own allegations that the presence of lead-sheathed cables—both in use and not—was well-known to the efficient market on which their claims depend. *See* SAC ¶¶ 82, 86. Plaintiffs respond by asserting that the alleged misstatements themselves supposedly "wiped the slate clean." MTD Opp. at 22 (quoting *In re Mylan N.V. Sec. Litig.*, No. 20-cv-955, 2025 WL 1874621, at *6 (W.D. Pa. July 8, 2025)). But that puts the cart before the horse. The concededly pre-existing knowledge about lead informs how the reasonable investor would understand the statements. Because the full context makes Plaintiffs' physical-removal interpretation implausible for a reasonable investor, there is no "express disavowal" of what the efficient market already knew. *Contra Mylan*, 2025 WL 1874621, at *6.

---

[5] Plaintiffs' attempts to distinguish *Lumen* on the ground that "the defendants [in that case] made no affirmative representation about removing or replacing legacy infrastructure," MTD Opp. at 21, simply misstates the *Lumen* decision. The court there held that there were no materially false or misleading statements, even though plaintiffs alleged that, in "[c]all after call, [defendants] told investors that they were 'replacing' legacy infrastructure with fiber." *Lumen*, 2025 WL 978229, at *6.

11

As to the other supposed reasons the Group 1 statements were allegedly misleading—the claims of costs and environmental benefits—Plaintiffs have almost nothing to say. They point to the same sorts of guesses of remediation costs as in the prior Complaint. MTD Opp. at 23. But Plaintiffs do not dispute that a fiber-optic network requires less energy and is thus cheaper and greener to run. Nor do they attempt to quantify those benefits. As this Court has held, that fails to satisfy the PSLRA's particularity requirement by failing to "set forth any allegations comparing the alleged liability of the lead[-sheathed] cables with the costs of converting from copper to fiber to support their argument that, essentially, the liability offsets any, if not most, of the cost benefits of the conversion." Dkt. No. 77 at 14; *see also Maiden Holdings*, 2025 WL 2406864, at \*6 (recognizing insufficiency of allegations that "provided no information on how [supposedly] omitted data compared to other considerations").

Plaintiffs' claim that "touting cost savings … implicitly suggested that Verizon handled any remediation cost associated with the FiOS transition in the ordinary course when installing new cable" is thus incorrect, and certainly cannot support falsity. *See* MTD Opp. at 23. To start, there was no such implicit suggestion, given the lack of any claim about lead sheathing, or remediation at all. And in any event, there is no adequate allegation that, *at the time of the alleged misstatements*, anyone at the company contemplated (or was reckless in not contemplating) material remediation costs.[6]

---

[6] Respectfully, the suggestion in the AT&T case that statements akin to some of the Group 1 statements here were actionable was both unnecessary given that that court

### B.    The Group 2 Statements Are Not False Or Misleading.

Plaintiffs' attempts to defend their falsity allegations as to the two Group 2 statements fare no better.  As the Court held in dismissing the prior Complaint, the Group 2 statement regarding employee training was not actionable because "plaintiffs fail[ed] to assert any facts demonstrating that [it was] misleading."  Dkt. No. 77 at 18. That was so even though Plaintiffs had alleged that Verizon "harmed its employees [by] failing to provide protective equipment to those employees exposed to the lead-sheathed cables."  *Id.* at 16.  As Defendants have repeatedly explained, there is no plausible allegation that Verizon did not provide or update its training on various topics, and a statement about pursuing a goal is not tantamount to a claim that the goal is always met.  MTD at 34-35; Dkt. No. 58-1 at 35; *see Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018).  Plaintiffs' attempts to bolster their allegation with more of the same suggestion—that Verizon's training practices sometimes fell short of their goals, *see* MTD Opp. at 27—are merely more "quibble[s] with [the Company's] execution of [its] programs and procedures" that "do not conflict with Defendants' statements regarding [them]."  *See Ong*, 294 F. Supp. 3d at 232.[7]

---

had already held that scienter was not adequately alleged, and wrong, for the reasons above.  *See In re AT&T Inc. Sec. Litig.*, No. 24-cv-1196, 2025 WL 1685840, at *5, *9-10 (N.D. Tex. June 16, 2025).

[7] Nor do the SAC's vague allegations of concerns being raised "at the director level," *see* MTD Opp. at 27 (citing SAC ¶ 295(g)(xiv)-(xv)), do anything to make plausible the idea that any Individual Defendant was aware of any such shortcomings.

13

Plaintiffs also fail to meaningfully rebut Defendants' explanations for why the second Group 2 statement is not actionable. *See* MTD at 35-36. Not only has the Court already deemed statements like this one to be puffery, *see* Dkt. No. 77 at 17-18 & n.2, but it is also not misleading because, again, statements about goals and commitments are not false or misleading simply because the goal is not fully met or achieved.

## C.    The Group 3 Statements Are Not False Or Misleading.

Plaintiffs' arguments regarding the Group 3 statements are similarly deficient. To start, Plaintiffs misstate this Court's prior rulings on puffery. The Court did not hold, as Plaintiffs suggest, that everything in these statements was material. *See* MTD Opp. at 25. Rather, the Court held that most of the statements—the "aspirational parts, such as Verizon continuing 'to work to reduce the environmental impact of' its products and that Verizon's 'goal [was] … to divert as much e-waste as possible'"—were immaterial puffery. Dkt. No. 77 at 20 (alterations in original). The only limited portions of the Group 3 statements the Court deemed potentially material were those that gave "an example" of Verizon's recycling work or "define[d] the types of 'e-waste' that Verizon seeks to recycle." *Id.* And as to those limited portions of the statements, the Court held that "plaintiffs again failed to present any arguments demonstrating that [they] are misleading. *Id.* (internal citation omitted).

In response, Plaintiffs insist that statements about Verizon's general goal of recycling e-waste and statistics about recycling particular forms of that waste "provide[d] an incomplete picture of material facts." MTD Opp. at 25. But the Court has already

14

considered and rejected this argument, *see* Dkt. No. 77 at 20, and Plaintiffs offer no new allegations that could justify a different result now.

## III.    Plaintiffs' Scheme Liability Claim Fails For Multiple Reasons.

As Defendants explained, Plaintiffs' scheme liability claim fails both for lack of scienter and for lack of any alleged misconduct distinct from their misstatement claim. MTD at 39.  Plaintiffs concede scienter is needed, *see* MTD Opp. at 39, which dooms the claim, *see supra* Section I.  And their argument that "abandoning lead cables in place and concealing the associated risks of financial losses" was a distinct scheme, *see* MTD Opp. at 39, is nothing like the "actions fraudulent in their own right" that supported scheme liability in their sole cited case, *see Mylan*, 2025 WL 1874621, at *8 (affirmative conduct including "creating a 'façade of documents' to fend off FDA inquiry").

## IV.    Plaintiffs' Section 20(a) Claim Fails For Multiple Reasons.

Finally, all agree that the Section 20(a) claim fails if the Rule 10b-5 claim fails. MTD at 40; MTD Opp. at 40.  And contrary to the lone 2008 case Plaintiffs cite, the "recent decisions of … courts in this Circuit … require a plaintiff to plead … culpable participation." *Howard v. Arconic Inc.*, No. 17-cv-1057, 2021 WL 2561895, at *29 (W.D. Pa. June 23, 2021) (collecting cases).  Plaintiffs have not alleged the actual knowledge of fraud that culpable participation demands, so their Section 20(a) claim fails on this element as well.  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484, 486 (3d. Cir. 2013).

## CONCLUSION

The Court should grant Defendants' motion to dismiss with prejudice.

15

Dated: Newark, New Jersey
      September 2, 2025

Respectfully submitted,


/s/ *Lawrence S. Lustberg*

Lawrence S. Lustberg
Samuel I. Portnoy
Michael V. Caracappa
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545

Geoffrey J. Ritts (*pro hac vice*)
Adrienne Ferraro Mueller (*pro hac vice*)
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Tel: (216) 586-3939
Fax: (216) 579-0212

Nina Yadava (*pro hac vice*)
Jennifer L. Del Medico
**JONES DAY**
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3690
Fax: (212) 755-7306

*Attorneys for Defendants*